IN THE CIRCUIT COURT FOR
PRINCE GEORGE'S COUNTY, MARYLAND

| | |
|---|---|
| GLADSTONE A. DAINTY<br>17551 Eleanor Lane<br>Upper Marlboro, Maryland 20774<br><br>      Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.<br>101 North Phillips Avenue<br>Sioux Falls, South Dakota 57104<br><br>Serve on: Resident Agent<br>          CSC-Lawyers Incorporating<br>         Company<br>         7 Saint Paul Street, Suite 820<br>         Baltimore, Maryland 21202<br><br>      Defendant. | Civil No. |

## COMPLAINT

Plaintiff Gladstone A. Dainty files this complaint against Defendant Wells Fargo Bank, N.A. d/b/a Wells Fargo Home Mortgage ("Wells Fargo").

### PARTIES

1. Mr. Dainty resided in Prince George's County, Maryland during the operative period of this complaint, and continues to reside in Prince George's County, Maryland.

2. Wells Fargo is a national bank organized under the laws of the United States, and maintains its principal place of business in South Dakota. During the operative period of the complaint, Wells Fargo acted through its actual or apparent agents, servants or employees, who acted within the scope of their said agency, and over whom Wells Fargo asserted actual or

constructive direction, control or authority. The identities of said agents may be ascertained from Wells Fargo's pertinent records.

## JURISDICTION AND VENUE

3. The relief claimed in this action includes injunctive relief, declaratory judgment, specific performance of a contract and damages in excess of $30,000, exclusive of prejudgment or postjudgment interest, costs and attorney's fees. This Court, therefore, has original jurisdiction over this matter pursuant to MD. CODE, CTS. & JUD. PROC. § 1-501.

4. Venue is proper in this Court, pursuant to MD. CODE, CTS. & JUD. PROC. § 6-202(3), in that Wells Fargo is a corporation which has no principal place of business in Maryland, and Mr. Dainty resides in Prince George's County, Maryland.

## FACTUAL ALLEGATIONS

5. On March 31, 2006, Mr. Dainty obtained a mortgage loan, which was secured by the Deed of Trust recorded among the land records of Prince George's County, Maryland in Liber 24932, Folio 286.

6. Wells Fargo held itself out as the mortgage servicer for the loan during the operative period of this complaint.

7. Mr. Dainty fell behind on his mortgage payments, and became interested in loss mitigation.

8. On February 2, 2016, Wells Fargo sent Mr. Dainty loss mitigation correspondence. In the letter, Wells Fargo stated:

> We want you to know there is a program available that may help you. If you qualify under the federal government's Home Affordable Modification Program . . . we will modify your mortgage loan and you can avoid foreclosure.

9. The letter then instructed Mr. Dainty to submit a Home Affordable Modification Program (HAMP) application. Wells Fargo promised to consider Mr. Dainty for the loss mitigation upon receipt of the application.

10. Lastly, in the letter, Wells Fargo further promised, "If you do not qualify, I will want to discuss other options with you . . . ."

11. The statements in paragraphs 9 and 10 of this complaint constituted clear and definite promises. In a nutshell, Wells Fargo promised to review Mr. Dainty for applicable loss mitigation if he submitted a HAMP application.

12. Wells Fargo's statements in paragraphs 8-10 of this complaint were false. On March 2, 2016, Wells Fargo sent Mr. Dainty correspondence showing that Wells Fargo at all times knew that the unpaid principal balance of the loan was "higher than the program limit." As a result, Wells Fargo knew that the program was not applicable.

14. Therefore, it was false and misleading for Wells Fargo to insinuate that Mr. Dainty might qualify under HAMP, as it did in paragraph 8 of this complaint. Since Wells Fargo knew HAMP was not available for Mr. Dainty, it never had the present intent to keep its promise to review Mr. Dainty for available loss mitigation, outlined in paragraph 9 of this complaint. Wells Fargo has never discussed other options with Mr. Dainty, which shows it never had the intent to keep its promise along those lines either, as outlined in paragraph 10 of this complaint.

15. Mr. Dainty relied to his detriment on the representations by (a) taking the time to complete and submit a HAMP application on February 18, 2016, and (b) not taking any defensive action, such as filing a motion to stay and dismiss, in the foreclosure action Wells Fargo filed against Mr. Dainty in this Court, Case No. CAE12-31118.

16. Wells Fargo denied the application on March 2, 2016, when it finally informed Mr. Dainty that the HAMP program was never applicable because the unpaid principal balance was not within the program limit.

17. Wells Fargo made several identical promises to Mr. Dainty with respect to the HAMP program, prior to February 2016. These promises were made repeatedly shortly after Wells Fargo filed the above-referenced foreclosure action. During all of those times, Wells Fargo knew that the program was not applicable due to the unpaid principal balance. As a result, on each and every occasion that Wells Fargo insinuated it might be able to provide a HAMP modification (in return for Mr. Dainty submitting an application, which he always did) Wells Fargo made a false or misleading representation of material fact. Mr. Dainty relied on each false statement by submitting applications, and never taking defensive action in the foreclosure action (for fear of irritating Wells Fargo and decreasing his chances of qualifying for a modification – a modification program he now knows was never applicable in the first instance).

18. Wells Fargo acted with actual malice, characterized by ill will and fraud. Wells Fargo intended to string Mr. Dainty along in order to allow late fees and penalties to increase while it stalled on the foreclosure action. This is because, as a servicer, Wells Fargo stood to profit from collecting revenue from the proceeds of a foreclosure sale as the late fees and penalties increased, month after month. Wells Fargo also intended that constantly promising to work with Mr. Dainty would lead him into a false state of comfort, and fail to take defensive action in the foreclosure action. Why else would Wells Fargo suggest loss mitigation it knew was inapplicable?

19. As a direct and proximate result of Wells Fargo's wrongful conduct, Mr. Dainty incurred damages. Mr. Dainty has suffered noneconomic damages in the form of mental anguish that has manifested physically, in the form of sleep loss and other physical symptoms.

20. There is no foreclosure-triggering default because a foreclosure is an equitable proceeding and the defendants have unclean hands in the matter, as they are required to review Mr. Dainty for *applicable* loss mitigation.

## COUNT I
## VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT

21. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

22. Plaintiff was a "consumer", and defendant was a "person", as those terms are defined in MD. CODE, COM. LAW § 13-101(c), (h).

23. The mortgage loan was a "consumer transaction", as the term is defined under § 14-201(c), because it was "any transaction involving a person seeking or acquiring real . . . property . . . or credit for personal, family, or household purposes."

24. Defendant was a "collector", as the term is defined in § 14-201(b), because it acted as a mortgage servicer, and thus was a "person collecting or attempting to collect an alleged debt arising out of a consumer transaction."

25. The Maryland Consumer Protection Act (MCPA), pursuant to § 13-301, defines "unfair or deceptive trade practices" as follows:

> Unfair or deceptive trade practices include any:
> (1) False . . . or misleading oral or written statement . . . or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;
> . . . .
> (14) Violation of a provision of:
> (i) This title;
> . . . .
> (iii) Title 14, Subtitle 2 of this article, the Maryland Consumer Debt Collection Act[.]

26. Defendant committed unfair or deceptive trade practices under § 13-301(1) by making false statements of material facts in the collection of a consumer debt as outlined in paragraphs 8-14 of this complaint.

27. The said unfair and deceptive communications had the capacity, tendency or effect of deceiving or misleading consumers, because Plaintiff detrimentally relied on the statements by submitting applications and failing to take defensive action in the foreclosure action as outlined in paragraph 15 of this complaint.

28. In addition to violating § 13-301(1), Defendant violated §§ 13-301(14)(iii) and 14-202(8), by claiming, attempting or threatening to enforce a right with knowledge that the right did not exist, each time it scheduled a foreclosure sale, since it had never done the prerequisite of complying with its loss mitigation obligations under Md. Code, Real Prop. § 7-105.1, in that it never addressed "applicable" loss mitigation options.

29. Defendant is subject to liability to Plaintiff for compensatory damages and counsel fees pursuant to §§ 13-408, 14-203.

    29.1. Defendant engaged in "unfair or deceptive trade practices" as outlined in paragraphs 26-28 of this complaint.

    29.2. Under § 13-303, "A person may not engage in any unfair or deceptive trade practice . . . in: . . . (5) The collection of consumer debts . . . ."

    29.3. Pursuant to § 14-203, "A collector who violates any provision of this subtitle is liable for any damages proximately caused by the violation, including damages for emotional distress or mental anguish . . . ."

    29.4. Pursuant to § 13-408:

> (a) . . . . [A]ny person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title.

6

> (b) *Attorney's fees.* -- Any person who brings an action to recover for injury or loss under this section and who is awarded damages may also seek, and the court may award, reasonable attorney's fees.

30. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff suffered the damages outlined in paragraph 19 of this complaint, and has incurred counsel fees in pursuing this lawsuit.

## COUNT II
## DETRIMENAL RELIANCE

31. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

32. On February 2, 2016, Defendant made a clear and definite promise to review Plaintiff for available loss mitigation. Defendant did not leave any discretion to itself.

33. Defendant RoundPoint had a reasonable expectation that its promise would induce action on the part of Plaintiff by inducing him to submit an application and fail to take action in the foreclosure action.

34. Plaintiff justifiably relied to his detriment by submitting an application and failing to take action in the foreclosure action.

35. Plaintiff's reliance was reasonable and justified, because most homeowners trust their mortgage servicers to do their jobs honestly and *should* be able to trust them to do their jobs honestly.

36. Defendant never considered Plaintiff for applicable loss mitigation, because it only considered Plaintiff for a HAMP modification despite knowing the program was not applicable.

37. Had Defendant honored its obligations, Plaintiff would have probably qualified for a modification. This would have nullified the default on the mortgage and saved the home from foreclosure.

38. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff suffered the damages outlined in paragraph 19 of this complaint.

## COUNT III
## NEGLIGENCE

39. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

40. Plaintiff shared a contractual relationship with Defendant under the Note and Deed of Trust. The parties, therefore, shared an intimate nexus. Special circumstances attached to the contractual relationship, because Plaintiff was particularly vulnerable to the risk of losing his home or incurring credit rating damage insofar as he was dependent upon Defendant, and only Defendant, to service the loan. There is a public interest in proper loan servicing.

41. Moreover, it was foreseeable to Defendant that Plaintiff would risk suffering the mental anguish outlined in paragraph 19 of this complaint if Defendant failed to keep its promise to review Plaintiff for available loss mitigation.

42. Defendant, therefore, owed tort duties to Plaintiff as a result of the intimate nexus created by the contractual relationship, Plaintiff's vulnerability to harm and dependency on Defendant, and the foreseeable risk of injury.

43. Defendant knew or should have known, and its said duties required it, to review Plaintiff for an applicable loss mitigation program, and not HAMP.

44. Defendant's failures to do so constituted a breache of the said tort duties.

45. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff suffered the damages outlined in paragraph 19 of this complaint.

## COUNT IV
## DECLARATORY JUDGMENT

46. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

47. An actual controversy exists among the parties, in that Defendant refuses to consider Plaintiff for applicable loss mitigation without any justification.

48. Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, in that Defendant's wrongful conduct has led it to declare default on the mortgage, and appoint substitute trustees to file foreclosure proceedings.

49. Plaintiff asserts his right to be considered for applicable loss mitigation under Md. Code, Real Prop. § 7-105.1, and this is challenged by Defendant, which has a concrete interest in the mortgage.

50. A declaratory judgment articulating Defendant's obligations would serve to terminate the uncertainty or controversy giving rise to this proceeding.

## COUNT V
## INJUNCTIVE RELIEF

51. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

52. Maryland Rule 15-502 allows any court to issue an injunction upon the terms that justice may require at any stage of an action.

53. Defendant should consider Plaintiff for available loss mitigation prior to proceeding with any activity in the foreclosure action.

54. There is a strong likelihood Plaintiff will succeed on the merits of his claims.

55. Less injury would be done to Defendant by granting the injunctive relief than would result to Plaintiff by denying the injunctive relief.

56. Plaintiff will suffer immediate, substantial and irreparable injury absent injunctive relief.

57. The public interest is best served by granting the injunctive relief.

58. There is no adequate remedy at law for Plaintiff to pursue.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant; award a total amount for compensatory damages and counsel fees not in excess of $75,000, prejudgment and postjudgment interest, and the costs of this action; enter a declaratory judgment in favor of Plaintiff and against Defendant; grant an injunction prohibiting Defendant from further pursuing foreclosure, and requiring Defendant to honor its loss mitigation obligations; and grant such other and further relief as justice requires.

## DEMAND FOR JURY TRIAL

Plaintiff Gladstone A. Dainty demands a jury trial as to all issues in this matter.

Respectfully submitted,

_____
Jason A. Ostendorf
**LAW OFFICE OF JASON OSTENDORF LLC**
One Corporate Center, Suite 400
10451 Mill Run Circle
Owings Mills, Maryland 21117-5594
Telephone: 410.356.8859
Jostendorf@ostendorflaw.com

Dated:   June 16, 2016         *Counsel for Gladstone A. Dainty*