UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| GLADSTONE A. DAINTY,<br><br>    Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>    Defendant. | Civil Action No. TDC-16-2755 |

## MEMORANDUM OPINION

Gladstone A. Dainty has filed this action against Wells Fargo Bank, N.A. ("Wells Fargo") alleging violations of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101 to -501 (West 2013), and state common law claims of detrimental reliance and negligence. Dainty also seeks declaratory and injunctive relief. Pending before the Court is Wells Fargo's Motion to Dismiss. For the reasons set forth below, the Motion is granted.

## BACKGROUND

On March 31, 2006, Dainty entered into a $999,999 mortgage loan relating to a property in Upper Marlboro, Maryland. Dainty began experiencing financial difficulties, and foreclosure proceeding were initiated on September 25, 2012 in the Circuit Court for Prince George's County, Maryland ("the Circuit Court").

In July 2013, Dainty filed for bankruptcy in the United States Bankruptcy Court for the District of Maryland, and the foreclosure action was stayed. Dainty submitted a proposed Chapter 11 Plan of Reorganization, which the bankruptcy court confirmed on July 7, 2015. The

Chapter 11 Plan provided that Wells Fargo's claim to the property at issue "shall be satisfied in full by the surrender of the collateral for that claim as of the effective date of the plan" and that confirmation of the plan would lift the stay in the foreclosure proceedings, allowing Wells Fargo "to foreclose on the property and take such steps as may be necessary to recover possession thereof." Joint Record ("J.R.") 70, ECF No. 16. Any unsecured deficiency claim would be barred unless Wells Fargo asserted it within 90 days of the date of the Chapter 11 Plan's confirmation. No such claim was asserted.

While the foreclosure proceedings continued, in February 2016, Wells Fargo sent Dainty correspondence inviting him to apply for a loan modification under the Home Affordable Modification Program ("HAMP"). HAMP aims to reduce foreclosures by encouraging lenders to refinance or otherwise modify mortgages. *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 772-74 (4th Cir. 2013). To qualify for a HAMP loan modification, a borrower must "meet certain threshold requirements," including having an unpaid principal balance that is below a specified amount. *Id.* at 773 (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012)). If the mortgage servicer determines that a borrower is eligible for a loan modification, the servicer implements a Trial Period Plan under new repayment terms. *Id.* These repayment terms become permanent after the trial period ends if the borrower has complied with the plan's terms and conditions. *Id.*

Wells Fargo's February 2, 2016 letter to Dainty stated:

> We want you to know there is a program available that may help you. If you qualify under the federal government's Home Affordable Modification Program and comply with the terms of the Home Affordable Modification Program Trial Period Plan, we will modify your mortgage loan and you can avoid foreclosure.

J.R. 108. After providing guidance on materials to be submitted as part of an application, Wells Fargo stated, "Once we receive all of your documentation and verify your information, we will

2

determine whether you qualify for a Home Affordable Modification of your loan." J.R. 112. The letter further stated, "If you do not qualify, I will want to discuss other options with you that may help you keep your home or ease your transition to another home." J.R. 113. Wells Fargo also stated:

> If your mortgage has been referred to foreclosure, as part of the foreclosure process, you may receive notices from a third-party attorney delivered by mail, or see steps being taken to proceed with a foreclosure sale of your home. During the HAMP Trial period, a foreclosure sale will not be held as long as you comply with the terms of the trial period and make all your payments on time.

J.R. 112. On February 18, 2016, Dainty submitted a HAMP application. Wells Fargo denied Dainty's application on March 2, 2016, explaining that he did not qualify for HAMP because the unpaid principal balance on his loan exceeded the program limit. Wells Fargo did not discuss other loss mitigation options with Dainty.

Dainty filed a motion to stay and dismiss the foreclosure proceedings on June 16, 2016. As reflected in the docket, the Circuit Court denied Dainty's motion because it did "not state a valid defense or present [a] meritorious argument," the request was "not timely filed/not excused for good cause," and the motion failed "to state [a] factual and legal basis" for relief. J.R. 24. The foreclosure action is pending on appeal. *See* Docket, *Dore v. Dainty*, No. CAE12-31118 (Cir. Ct. filed Sept. 25, 2012), http://casesearch.courts.state.md.us/casesearch/.

On or about June 16, 2016, Dainty filed this lawsuit in the Circuit Court. Dainty pleads in his Complaint that he detrimentally relied upon Wells Fargo's February 2, 2016 letter by taking the time to complete and submit a HAMP application and failing to take "defensive action" in the foreclosure proceeding. Compl. ¶ 17. He alleges that this reliance led to mental anguish, which manifested itself "in the form of sleep loss and other physical symptoms." *Id.* ¶ 19. Dainty seeks monetary damages, attorney's fees, a declaratory judgment, and an "injunction

prohibiting Defendant from further pursuing foreclosure, and requiring Defendant to honor its loss mitigation obligations." *Id.* at 10. Wells Fargo removed the action to this Court and filed its Motion to Dismiss, which is now ripe for disposition.

## DISCUSSION

Wells Fargo is seeking dismissal of all counts of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Wells Fargo argues that Dainty has not alleged sufficient facts to state a claim for violations of the MCPA (Count I), detrimental reliance (Count II), or negligence (Count III). In particular, Wells Fargo contends that Dainty has not presented facts to support the conclusion that it engaged in any unfair or deceptive practices or made any false statements or promises, that Dainty relied upon or was injured by any such statements or promises, or that Wells Fargo owed Dainty a duty of care under tort law. Wells Fargo also argues that Dainty has not shown that he is entitled to either declaratory or injunctive relief (Counts IV and V).

### I. Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* Moreover, Rule 9(b) requires a plaintiff to plead "with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), including "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby," *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297 (2d ed. 1990)).

When evaluating a motion to dismiss, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). Courts are permitted to consider documents attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Dainty quotes from Wells Fargo's February 2, 2016 letter in his Complaint, it provides the basis for his claims, and he does not object to the authenticity of the letter as submitted in the Joint Record. Accordingly, the Court will consider the document.

Courts may also consider facts and documents subject to judicial notice without converting a motion to dismiss into a motion for summary judgment. *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013). "Under this exception, courts may consider 'relevant facts obtained from the public record,' so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint." *Id.* (quoting *B.H. Papasan v. Allain*, 578 U.S. 265, 283 (1986)); *see Lolavar v. de Santibanes*, 430 F.3d 221, 224 n.2 (4th Cir. 2005) (taking "judicial notice of the records of a court of record"). The Court thus takes judicial notice of the Deed of Trust, the docket entries in the related foreclosure action and bankruptcy case, and the Chapter 11 Plan that was confirmed by the bankruptcy court. *See* Fed. R. Evid. 201(b)(2).

## II. MCPA

The MCPA prohibits the use of an "unfair or deceptive trade practice" in the "[t]he extension of consumer credit" or "[t]he collection of consumer debts" and provides for a private right of action. Md. Code Ann., Com. Law §§ 13-303(4)-(5), 13-408. In Count I of the Complaint, Dainty presents MCPA claims under both sections 13-301(1) and 13-301(14).

### A.     Section 13-301(1)

Dainty alleges that Wells Fargo violated section 13-301(1) by making a false and misleading insinuation that Dainty "might qualify under HAMP," even though it knew at all times that the amount of Dainty's unpaid principal balance made him ineligible for the program. Compl. ¶ 14. To state an MCPA claim under section 13-301(1), a plaintiff bringing a private action must adequately plead that (1) the defendant engaged in an unfair or deceptive practice or misrepresentation, (2) the plaintiff relied upon the representation, and (3) doing so caused the plaintiff actual injury. *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768-69 (D. Md. 2012) (citing *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 277 (Md. 2007)), *aff'd sub nom. Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013). An "unfair or deceptive" trade practice includes a "false . . . or misleading oral or written statement . . . or other representation . . . which has the capacity, tendency, or effect of deceiving or misleading consumers." Md. Code Ann., Com. Law § 13-301(1).

Dainty claims that Wells Fargo's statements in the February 2, 2016 letter constitute unfair or deceptive representations, and that those representations induced him to complete and submit a HAMP application and take no action in the ongoing foreclosure proceeding. The primary language that Dainty cites is: "We want you to know there is a program available that *may* help you. *If* you qualify under [HAMP] . . . we will modify your mortgage loan and you can

6

avoid foreclosure." Compl. ¶ 8 (emphasis added). As the highlighted text reveals, the letter does not state that Dainty would qualify for HAMP or even that he was likely to qualify for the program. This conditional representation, therefore, is not false or misleading, nor does it have a tendency to deceive. *See Goss v. Bank of America, N.A.*, 917 F. Supp. 2d 445, 450 (D. Md.) (dismissing an MCPA claim where the mortgage servicer's letter "offering to assist [plaintiffs] in seeking a modification" "did not state definitively" that it would offer plaintiffs a Trial Period Plan), *aff'd sub nom. Goss v. Bank of America, NA*, 546 F. App'x 165 (4th Cir. 2013).

In addition, Dainty asserts that Wells Fargo falsely stated in the letter that it would "consider Mr. Dainty for the loss mitigation upon receipt of the application," because Wells Fargo already knew that he did not qualify for HAMP and thus "never had the present intent to . . . review Mr. Dainty for available loss mitigation." Compl. ¶¶ 9, 12, 14. The letter, in fact, does not contain the statement that Wells Fargo would "consider" Dainty's application. The closest language is the bank's assertion that: "Once we receive all of your documentation and verify your information, we will determine whether you qualify" for a HAMP modification. J.R. 112. This language is not a misrepresentation based on the facts alleged in the Complaint, because Dainty does not claim that Wells Fargo failed to determine his eligibility for HAMP. Indeed, he acknowledges that Wells Fargo determined that he did not qualify for the program. As another example of an allegedly false or misleading statement, Dainty also points to Wells Fargo's representation that "If you do not qualify, I will want to discuss other options with you." Compl. ¶ 10. He asserts that the bank "never discussed other options with Mr. Dainty." *Id.* ¶ 14. Despite the lack of discussions initiated by Wells Fargo, the statement is not an unfair or deceptive trade practice because the words "will want to" made no commitment to engage in such discussions. Moreover, the full sentence states that Wells Fargo "will want to discuss other

options with you that may help you keep your home *or ease your transition to another home.*" J.R. 113 (emphasis added). The latter half of the statement makes clear that there may not be any loss mitigation program available that would allow Dainty to avoid foreclosure. Thus, with their conditional phrasing and lack of any commitment to approve Dainty's HAMP application, these statements cannot fairly be construed to have a "capacity, tendency, or effect of deceiving or misleading" Dainty into believing that he was likely to receive a loan modification under HAMP or any other program. Md. Code Ann., Com. Law § 13-301(1).

Even if any of these statements could be deemed to be "unfair or deceptive" trade practices, the Complaint fails plausibly to allege reliance that caused an actionable injury under the MCPA. To establish an actual injury, Dainty must show that he "suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the [defendant's] misrepresentation." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 277 (Md. 2007). Dainty contends that he "relied to his detriment on the representations" by "taking the time to complete and submit a HAMP application" and forgoing defensive action in the foreclosure proceedings "such as filing a motion to stay and dismiss." Compl. ¶ 15. Time spent completing and submitting the HAMP application, however, is not cognizable because Dainty makes no allegation "that this resulted in compensable loss, such as lost wages due to time away from work." *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 256 (D. Md. 2013) (dismissing an MCPA claim even though the complaint claimed that the plaintiffs took "time out of their lives to submit and re-submit documentation" for a loan modification program), *aff'd mem*, 528 F. App'x 246 (4th Cir. 2014); *Kaswell v. Wells Fargo Bank, N.A.*, No. RDB-13-2315, 2014 WL 3889183, at *6 (D. Md. Aug. 6, 2014) (finding that the assertion that the plaintiff expended "time and costs" on submitting requested documentation was not sufficient to properly allege reliance

that caused actual injury); *see also Butler v. Wells Fargo Bank, N.A.*, No. MJG–12–2705, 2013 WL 3816973, at *4 n.9 (D. Md. July 22, 2013) (stating that a claim for damages in an MCPA case based on filling out paperwork would be dismissed).

Second, Dainty's decision to forgo filing a motion to stay and dismiss in the foreclosure proceeding cannot plausibly be construed as causing an actual injury traceable to the conditional statements Wells Fargo letter. Dainty, in fact, filed a motion to stay and dismiss on June 16, 2016, and the Circuit Court denied it not only because it was untimely, but also because it did "not state a valid defense or present [a] meritorious argument" and failed "to state [a] factual and legal basis" for relief. J.R. 24. Significantly, under the Chapter 11 Plan, Dainty had already agreed to surrender his home as part of an arrangement by which Wells Fargo could not file, after 90 days of the date of the Chapter 11 Plan's confirmation, a claim for additional loan charges or amounts due. Thus, Dainty's decision to delay filing such a motion did not cause an actual injury to him. *See Butler*, 2013 WL 3816973, at *4 n.9 (rejecting a conclusory allegation that forgoing action in the foreclosing proceedings constituted damages under the MCPA).

Dainty also asserts non-economic injury in the form of mental anguish that manifested itself as "sleep loss and other physical symptoms." Compl. ¶ 19. "Actual injury or loss under the MCPA includes 'emotional distress and mental anguish' so long as 'there was at least a consequential physical injury' in the sense that 'the injury for which recovery is sought is capable of objective determination.'" *Butler*, No. MJG–12–2705, 2013 WL 3816973, at *3 (quoting *Hoffman v. Stamper*, 867 A.2d 276, 295 (Md. 2005)). Because Dainty has not alleged facts that support the connection between the physical symptoms and Wells Fargo's conduct, he has not established an actionable injury. *See Green*, 927 F. Supp. 2d at 256-57 (concluding that

the complaint failed to allege facts sufficient to make a causal connection between an MCPA violation and the plaintiff's "mental anguish"); *Kaswell*, 2014 WL 3889183, at *6 (same).

This Court's decision in *Palermino v. Ocwen Loan Servicing, LLC*, No. TDC-14-0522, 2015 WL 6531003 (D. Md. Oct. 26, 2015), relied upon by Dainty, does not alter the conclusion that Dainty has not sufficiently alleged a violation of section 13-301(1). Contrary to Dainty's assertions, the facts in *Palermino* are not "substantively identical" to those in the present case. Resp. 1, ECF No. 14. In *Palermino*, the Court found that the complaint stated an MCPA claim when it alleged that the loan servicer encouraged a loan modification application, rejected it, then encouraged the filing of another application a year after the initial rejection and made numerous requests for additional documentation, only to deny that application as well. *Id.* at *1, 3. The plaintiff alleged that the servicer did not intend to grant her applications, as evidenced by its use of "the wrong standard of review." Am. Compl. ¶ 53(c), *Palermino*, No. TDC-14-0522 ("*Palermino* Am. Compl."). The plaintiff also alleged that she was then induced to agree to the reinstatement of her defaulted mortgage by false representations that payment of a specific amount "would cure all of the arrears, including outstanding fines and fees" and that all past due amounts would be incorporated into the new principal balance. *Palermino*, 2015 WL 6531003 at *3 (quoting *Palermino* Am. Compl. ¶ 53(e)). As a result of the allegedly misleading statements, the plaintiff in *Palermino* "emptied her retirement account to pay for the reinstatement," took on a "significantly higher principal balance," and incurred "additional significant fines and fees" during the time that she submitted multiple loan modification applications. *Id.* (quoting *Palermino* Am. Compl. ¶ 53(d)). By contrast, Dainty has not alleged an inducement to file a loan modification application shortly after a previous application was rejected, false claims that a new agreement would consolidate all outstanding arrears, or detrimental reliance in the form of

substantial financial outlays. The Motion to Dismiss the MCPA claim under section 13-301(1) is therefore granted.

### B. Section 13-301(14)

Dainty also alleges that Wells Fargo violated section 13-301(14)(iii) of the MCPA by scheduling foreclosure sales, even though it "had never done the prerequisite of complying with its loss mitigation obligations under Md. Code, Real Prop. 7-105.1, in that it never addressed 'applicable' loss mitigation options." Compl. ¶ 28. To present a valid MCPA claim under this provision, a plaintiff must allege a violation of a provision of the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-201 to -204. Md. Code Ann., Com. Law § 13-301(14)(iii). The MCDCA provides that a debt collector, "[i]n collecting or attempting to collect an alleged debt may not . . . "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." *Id.* § 14-202(8).

Dainty does not present a plausible claim for a violation of MCDCA. Wells Fargo's right to initiate the foreclosure proceedings arose when Dainty defaulted on his mortgage. *See, e.g., Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 802 (D. Md. 2013); *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 464 (D. Md. 2013). Although Dainty alleges that the bank has improperly initiated foreclosure proceedings because it did not comply with Maryland law requirements relating to loss mitigation, he does not dispute the validity of Wells Fargo's right to the debt. Courts in this district have recognized that the MCDCA does not "allow for recovery in errors or disputes in the process or procedure of collecting legitimate, undisputed debts." *Stewart*, 859 F. Supp. 2d at 770; *see also Lembach v. Bierman*, 528 F. App'x 297, 304 (4th Cir. 2013) (rejecting an MCDCA claim based on the claim that disputed signatures on the foreclosure documents rendered the debt invalid); *Crowley v. JPMorgan Chase Bank,*

11

*Nat'l Assoc.*, No. RDB-15-00607, 2015 WL 6872896, at *8 (D. Md. Nov. 9, 2015) (dismissing an MCDCA claim where the bank "failed to meet procedural requirements"). In *Currie*, the court dismissed an MCDCA claim based in part on the failure to conduct a loss mitigation analysis prior to foreclosure even though the plaintiffs had "identified at least three specific requirements under the Real Property Article that Defendants allegedly violated," including the failure to conduct such an analysis. 950 F. Supp. 2d at 802; *see also Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC 11–3758, 2013 WL 247549, at *9-10 (D. Md. Jan. 22, 2013) (dismissing an MCDCA claim because a servicer's arguable violation of a federal or state statute "in connection with . . . loan modification requests" would have "no bearing on its contractual foreclosure rights"). Likewise, Dainty cannot assert a valid MCDCA claim based on Wells Fargo's alleged failure to comply with loss mitigation obligations prior to seeking to foreclose. Because Dainty does not have a plausible claim for a violation of the MCDCA, the Motion to Dismiss the MCPA claim under section 13-301(14) is granted.

### III. Detrimental Reliance

In Count II, Dainty alleges a common law claim for detrimental reliance based on his assertion that he reasonably relied to his detriment upon Wells Fargo's "clear and definite promise to review Plaintiff for available loss mitigation" when he "submit[ted] an application" and chose not "to take action in the foreclosure action." Compl. ¶¶ 32-34. He asserts that "[h]ad Defendant honored its obligation, Plaintiff would have probably qualified for a modification," but the failure to do so resulted in foreclosure proceedings and caused him mental anguish. *Id.* ¶¶ 37-38.

> A plaintiff alleging a detrimental reliance claim must establish:
>
> (1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; (3) which does induce actual and reasonable action or forbearance by

> the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise.

*Pavel Enterprises, Inc. v. A.S. Johnson Co., Inc.*, 674 A.2d 521, 532 (Md. 1996) (footnote omitted) (quoting Restatement (Second) of Contracts § 90(1) (Am. Law Inst. 1979)).

The Complaint fails to articulate a plausible claim of detrimental reliance. The language in Wells Fargo's February 2, 2016 letter does not convey a "clear and definite promise." The statements that "We want you to know there is a program available that may help you" and "If you qualify under [HAMP] . . . we will modify your mortgage loan and you can avoid foreclosure," J.R. 108, simply invite Dainty to apply and in no way indicates that Dainty would necessarily qualify. Although the statement "If you do not qualify, I will want to discuss other options with you," J.R. 113, evinces an interest in discussing other non-HAMP options, it cannot be construed as a promise to consider Dainty for any alternative programs.

Moreover, Dainty has not alleged sufficient facts to establish that the alleged promise induced a reasonable action or forbearance. Dainty asserts that his detrimental reliance consisted of expending time preparing a loan modification application and refraining from filing a motion to stay or dismiss the foreclosure proceedings. Any time spent completing and submitting an application, however, does not constitute detrimental reliance absent some resulting compensable loss, such as lost wages. *See Green*, 927 F. Supp. 2d at 254, 256-57. Moreover, in *Green*, the court held that the plaintiffs failed to state a detrimental reliance claim where they "refrained from raising objections in the foreclosure proceeding" but made no allegation that the bank "specifically directed them to do, or to refrain from doing, anything that adversely affected the state of affairs that existed prior to the alleged misrepresentations." *Id.* at 255-56. Here, the decision not to take defensive action in the foreclosure proceeding was likewise not reasonable reliance both because Dainty was never directed to forgo any particular action and because the

letter's reference to the fact that steps may be "taken to proceed with a foreclosure sale of your home" up until any HAMP trial period began, J.R. 112, rendered any such forbearance unreasonable. The Motion to Dismiss is therefore granted as to the detrimental reliance claim.

## IV. Negligence

In Count III, Dainty asserts a negligence claim, alleging that Wells Fargo breached its duty of care when it failed to "review Plaintiff for an applicable loss mitigation program, and not HAMP." Compl. ¶¶ 43-44. To establish a negligence claim, a plaintiff must allege (1) the breach of a duty of care owed to the plaintiff, (2) "a legally cognizable causal relationship between the breach of duty and the harm suffered," and (3) damages. *Jacques v. First Nat'l Bank of Maryland*, 515 A.2d 756, 758 (Md. 1986). "Absent a duty of care there can be no liability in negligence." *Id.* Where the sole alleged harm is economic loss, a duty of care exists only if there is an "intimate nexus between the parties" such as "contractual privity or its equivalent." *Id.* at 759-60. A contract, by itself, does not create a duty of care sufficient to give rise to a tort claim; there must also be "at the same time" a duty "imposed by or aris[ing] out of the circumstances surrounding or attending the transaction." *Id.* at 759.

Banks do not owe their customers a duty of care where there is "no contractual basis for a special duty of care" and there are no special circumstances present that may create a fiduciary duty. *Spaulding*, 714 F.3d at 778-79 (quoting *Kuechler v. Peoples Bank*, 602 F. Supp. 2d 625, 633 (D. Md. 2009)); *see generally Parker v. Columbia Bank*, 604 A.2d 521, 533-35 (Md. Ct. Spec. App. 1992) (identifying special circumstances). "Courts have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not

found in the loan agreement." *Spaulding*, 714 F.3d at 778 (quoting *Kuechler*, 602 F. Supp. 2d at 633).

Here, Dainty asserts that Wells Fargo owed him a duty of care because they had a contractual relationship based on the Note and Deed of Trust, and special circumstances were present since he "was particularly vulnerable to the risk of losing his home or incurring credit rating damage" based on his dependence on Wells Fargo. Compl. ¶ 40. The alleged negligence, however, arises not from the underlying mortgage but from the invitation to apply for the loan modification program. The existing contractual relationship stemming from the Note and Deed of Trust has no bearing on whether Wells Fargo owed Dainty a duty of care as to the review of available loss mitigation programs. *See Green*, 927 F. Supp. 2d at 251-53. In *Green*, although the plaintiffs argued that the bank had a duty of care based on the contractual relationship arising from the underlying mortgage, the court found no nexus sufficient to impose a tort duty because where the plaintiffs were already threatened with the loss of their home before they sought a loan modification, their submission of a loan modification request constituted a different transaction. *Id.* at 252-53 ("While it is likely true that Plaintiffs were vulnerable due to the pending foreclosure action, that vulnerability related to factors independent of their request for loan modification."). Likewise, because Dainty was already at risk of foreclosure prior to the issuance of the February 2, 2016 letter relating to a possible loan modification, that letter related to "an entirely different transaction" which had not ripened into a contract and thus did not give rise to a duty of care as a matter of tort law. *Id.* at 252; *see Goss*, 917 F. Supp. 2d at 452 (finding that the bank did not owe the plaintiffs a duty of care in processing their loan modification application "where the letter and subsequent actions of [the bank] did not even create an enforceable contract or other nexus between [the bank] and the [plaintiffs], beyond their

mortgage agreement"). Because there is no duty of care as a matter of law, the Motion to Dismiss is granted as to Dainty's negligence claim.

## V.    Declaratory and Injunctive Relief

Counts IV and V of the Complaint seek a declaratory judgment "articulating Defendant's obligations" and an injunction "prohibiting Defendant from further pursuing foreclosure, and requiring Defendant to honor its loss mitigation obligations." Compl. at 9-10. A court cannot issue a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 (2012), or an injunction under Federal Rule of Civil Procedure 65 unless there is another valid cause of action in the case. *Univ. Gardens Apartments Joint Venture v. Johnson*, 419 F. Supp. 2d 733, 742 (D. Md. 2006). Because the Court has concluded that Dainty has failed to allege a valid independent cause of action, the claims for declaratory and injunctive relief necessarily fail.

Moreover, under the Anti-Injunction Act, 28 U.S.C. § 2283, this Court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *Id.* Thus, because an injunction to bar further action to advance the foreclosure proceeding would effectively stay an *in rem* proceeding in a state court, this Court may not order this aspect of the claim for injunctive relief or a declaratory judgment that would have the same effect. *See Denny's, Inc. v. Cake*, 364 F.3d 521, 528 n.9 (4th Cir. 2004); *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 641-42 (D. Md. 2015). Although Dainty seeks to enjoin Wells Fargo rather than the Circuit Court, the Anti-Injunction Act "cannot be evaded by addressing the order to the parties" in place of the state court. *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970). The Court therefore grants the Motion to Dismiss as to the claims for declaratory and injunctive relief.

## CONCLUSION

For the foregoing reasons, Wells Fargo's Motion to Dismiss is GRANTED. A separate Order shall issue.

Date: February 23, 2017

THEODORE D. CHUANG
United States District Judge